

RECEIVED

NOV 0 - 2024

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF CALIFORNIA**

DEPUTY CLERK

FILED

NOV 04 2024

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
DEPUTY CLERK

| | |
|---|---|
| Jamie Osuna, CDCR #BD0868<br>PO Box 3476<br>Corcoran, CA 93212<br>Pl.,<br><br>  against<br><br>A. Guerrero, T. Brazelton,<br>J. Zimora, K. Matta, C. Love, E.<br>Sanchez, V. Pena, J. A. Arisco, J.<br>Fugate, C. Navarro, E. Leija, M.<br>Medina, M. Kimbrell, E. Cantu, S.<br>Weaver, C. Morelock, E. McDaniel,<br>T. Sparks, A. Johnson, B. McKinney,<br>R. Silva, A. Aranda, J. Fugate, K.<br>Clark, T. Campbell, et al<br>Defs. | Docket No.: 1:24-cv-01009<br>Amended Complaint<br>**CIVIL RIGHTS COMPLAINT UNDER**<br>42 U.S.C. § 1983<br>State Prisoner<br><br><br>**COMPLAINT FOR DECLARATORY AND<br>INJUNCTIVE RELIEF,<br>COMPENSATORY AND PUNITIVE<br>DAMAGES**<br><br><br>**DEMAND FOR JURY TRIAL** |

## I. JURISDICTION & VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 & § 1343 (a)(3) in that this is a civil action arising under 42 U.S.C. § 1983. Pl. seeks declaratory, injunctive, punitive, and compensatory judgments pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201 & § 1346. Venue is proper pursuant to 28 U.S.C. § 1391 (a)(b) because a substantial part of events and omissions giving rise to Pl.'s claims occurred at CSP-COR, Corcoran, CA, which is within this Court's judicial district.

## II. INTRODUCTION

2. Plaintiff (Pl.) brings this complaint seeking damages to remedy violations of his civil rights under the First and Fourth Amendments to the U.S. Constitution. Pl. alleges Defendants (Defs.) Does 1-TBD who were/are CDCR employees illicitly took/copied and or disseminated to the public crime scene photos from Pl.'s open felony case 19CM-1882.

3. 03/2019, the circumstances of 19CM-1882—a potential death penalty case—occurred in CSP-COR with the death of Pl.'s then cellmate L. (Luis Gilberto) Romero H56733.

4. Pursuant to CDCR/state protocols, it was the immediate, mandatory responsibility of CSP-COR Investigative Services Unit (ISU) Officers to secure, collect, preserve, and thereafter manage any and all evidence, including crime scene and investigative photos. These materials, against protocol, were added to Pl.'s C-File/SOMS (central file system where offenders' records are stored) as regular rules violations write-ups. This status for/on the records enabled any CDCR employee to enter their user login and search/pull these records.

5. Without any work-related reason, Defs. Does, through their work logins/computers, had accessed 19CM-1882 crime scene photos/other materials stored in Pl.'s C-File/SOMS. Defs. Does allegedly copied these photos for gratuitous reasons and or disseminated the photos, which are now posted on a variety of public websites, social media, traded and offered for sale, used to create/promote podcasts and other productions for a public audience. One former CDCR Lt. even used the photos to impress his social media viewers and to promote and sell his Patreon website membership.

6. This leak happened despite various state and department policies and protocols in place guiding the chain of evidence, authorized access, social media usage, authorized disclosure, confidentiality, and mandatory misconduct reporting. CDCR provides mandatory training for all staff regarding these policies and protocols.

7. If these policies and protocols had been followed by Defs. Does, the crime scene photos would not have been leaked.

8. ISU Officers allegedly refused to address the crime scene photos leak when put on notice about it and refused to take possession of Pl.'s evidence regarding the breaches/leak. This

evidence included print outs with links to the leaked photos and captures of online, public posts published by self-identified correctional staff who bragged about illicitly entering Pl.'s C-File/SOMS and viewing/getting the photos.

9. These same ISU officers work with the Kings County DA's Office for 19CM-1882's investigation and provide Pl.'s court transportation services for 19CM-1882 hearings so that it is reasonable to expect these Defs. to be aware of the authenticity of the photos online, in addition to the extreme damages and injuries such a leak caused/causes Pl.

10. 19CM-1882 materials/crime scene photos are additionally considered confidential records under CDCR policies and state regulations and codes and are treated as confidential/sealed materials in Kings County Superior Court for 19CM-1882 proceedings.

11. Pl.'s legal team for 19CM-1882 had not received legal discovery until around late 2019. Passive dataset searches conducted for Pl.'s complaint showed that the leaks pre-dated this.

12. Due to Pl.'s intellectual hardship of being under continual PC 2602 orders, schizophrenic-type mental illness, SHU/RHU housing, no access to the internet/referenced sites and materials, Pl. received help with research for and the transcribing/writing of this complaint.

### III. PARTIES

13. Pl. Jamie Osuna is a state prisoner incarcerated at CSP-COR, Corcoran, CA.

14. Def. A. Guerrero is an ISU/IGI CO and is being sued in his individual, official capacities.

15. Def. T. (Trevor) Brazelton is an ISU/IGI CO and is being sued in his individual, official capacities. Def. is presumed now working at Avenal State Prison, Avenal, CA.

16. Def. J. (Jennifer A.) Zamora is a Correctional Counselor (CC) II and is being sued in her individual, official capacities.

17. Def. K. (Kevin R.) Matta is a CC and is being sued in his individual, official capacities.

18. Def. C. (Che) Love is an ISU/IGI Lt. and is being sued in his individual, official capacities.

19. Def. E. (Eric) Sanchez, an ISU/IGI CO, is being sued in his individual, official capacities.

20. Def. V. (Vincente) Pena, an ISU/IGI CO, is being sued in his individual, official capacities.

21. Def. C. (Charles) Morelock was an ISU/IGI Sgt. and is being sued in his individual, official capacities. Def. is now a Lt.

22. Def. E. (Eric) McDaniel is CEA and is being sued in his individual, official capacities.

23. Def. T. (Tiffany) Sparks(-Mendoza) is a mental health supervisor and is being sued in her individual, official capacities.

24. Def. A. (Andrew) Johnson is a Cpt. and is being sued in his individual, official capacities.

25. Def. B. (Barabra) McKinney, Associate Warden (AW), is being sued in her individual, official capacities.

26. Def. R. Silva is an AW and is being sued in his individual, official capacities.

27. Def. A. (Alonzo) Aranda is a Lt. is being sued in his individual, official capacities.

28. Def. J. Fugate is an ISU/IGI Officer and is being sued in his individual, official capacities.

29. Def. K. (Ken) Clark was Warden and is being sued in his individual, official capacities.

30. Def. T. (Tammy L.) Campbell, Warden, is being sued in her individual, official capacities.

31. A. (Anthony) Arisco, an ISU/IGI CO, is being sued in his individual, official capacities.

32. R. (Richard) Rubio is an ISU/IGI CO and is being sued in his individual, official capacities.

33. C. (Carlos) Navarro is a ISU Sgt. and is being sued in his individual, official capacities.

34. E. (Elias [J.]) Leija is an ISU/IGI CO and is being sued in his individual, official capacities.

35. M. Medina is a property CO and is being sued in her individual, official capacities.

36. S. Weaver is a property CO and is being sued in his individual, official capacities.

37. S. (Scott) Harris, CSP-COR's Chief of Mental Health, is being sued in his individual, official capacities

38. E. (Elizabeth) Cantu is a CC and is being sued in her individual, official capacities.

39. M. (Mary) Kimbrell is a CC and is and is being sued in his individual, official capacities

40. Defs. (John/Jane) Does, 1-TBD, were/are CDCR personnel and are being sued in their individual, official capacities.

## IV. PREVIOUS LAWSUITS

41. 1.) Asuna v. Brown, et al; 1:19-cv-00554-EPG, 02/2019; dismissed without prejudice; 2.) Osuna v. Burnes, et al; 1:24-cv-00793-KES-SAB, 06/2024; pending; 3.) Osuna v. LaVoice, et al; Case #: 124-cv-01122-KES-SKO, 09/2024; pending (not a § 1983); 4.) Osuna v. Campbell, et al; 08/2024 1:24-cv-01156-JLT-EPG, pending.

## V. ADMINISTRATIVE REMEDIES

42. Grievance ("602") log 417723 and 317283 were exhausted in 2023 at all levels in the California Department of Corrections and Rehabilitation (CDCR.)

## VI. FACTUAL ALLEGATIONS

43. The acts described herein follow years of alleged misconduct by CDCR employees regarding the personal/confidential information stored in Pl.'s C-File/SOMS. CDCR previously notified Pl. that staff, in violation of CDCR policies, HIPPA, and other acts/regulations, posted Pl.'s dental records, and other private information, on social media on at least two separate occasions. Around 05/2019, a special committee was held under H. Gutierrez (CC) in California Health Care Facility (CHCF.) The committee recognized 19CM-1882 as a case of interest. This committee "locked" Pl.'s C-File/SOMS.

44. Staff now had to enter who had given them authority to and the reason for accessing Pl.'s file and enter their badge/ID number. CDCR's general policy is that only those employees who have duties involving an inmate should access that inmate's C-File/SOMS, allowing inmates to have reasonable expectations of privacy regarding their personal information/file.

45. 05/02/2019, Judge D. Tarter of Kings County Superior Count denied KGET17 News', request for 19CM-1882's confidential case report citing CA Public Records Act (CPRA); GOV § 6252 (a)(f)(1); Cal. Constitution, Act VI, § 4; CA Rules of Court 10.500 *Public access to judicial administrative records*.

46. On or around 05/24/2019, Interim County Counsel stated that for 19CM-1882 there was a *"need to preserve the integrity of evidence and [Pl.'s] due process rights are significant interests sufficient to override the right of public access to the record and supports sealing the record."*

47. In or around 10/2022, in CSP-SAC, it was brought to Pl.'s attention from the streets that 19CM-1882 crime scene photos were leaked online. Pl. filed a 602 over the matter. Around 12/2022, the reviewing authority transferred the 602 to CSP-COR's reviewing jurisdiction.

48. In or around 06/2023, it was brought to Pl.'s attention from the streets of newly found 19CM-1882 crime scene photos now posted publicly online, and the old leaks Pl. had already 602ed were still online. One newly leaked photo was of Pl. from when Pl. was held in a mental health area of the prison. Pl. was identifiable in the photo with Pl.'s full face shown. This photo had been photographed by Def. R. Rubio/ISU Officers during ISU/IGI's strip search of Pl. for 19CM-1882's investigation. Posts/reposts of the photos often appeared around the timing of Pl.'s 19CM-1882 court hearings.

49. Pl. learned from the streets that around early-mid 2019 to the present, leaked 19CM-1882 photos/materials have been posted, described, traded, and even sold on social media and subscription and traditional websites, including, but not limited to: Sword and Scales (paid subscription website, social medias), YouTube, Twitter/X, TikTok, Instagram, Reddit, Fenix Media (website, social medias), Patreon. Some posters stated in online videos or comments that such materials were provided by "a CSP-COR guard" or other CSP-COR/CDCR employees, or which had been posted without any origin/source explanation.

50. Some posters of/on the social media posts with the leaked photos stated they (the posters) were CDCR employees who had gone into Pl.'s C-File/SOMS and had seen or taken the crime scene photos. Passive dataset searches conducted for this complaint show that these names/profiles were associated with actual identities of current/former CDCR employees.

51. These posts include CDCR employee Maria Garcia's [under screenname fac3308] post, *"Good one, Hector! I read this crazy fkrs [sic] file and got the crime scene photos of his dead cellmate."*

52. Former Lt. Hector Ferrel from R. J. Donovan (San Diego, CA), [under screenname thatprisonguard] made a 04/2023 YouTube video about 19CM-1882 and Pl., therein provided details indicated as being from CDCR's confidential crime incident report. In his video's comment section, he stated that while working for CDCR, *"I read [Pl.'s] file numerous times,"* and had made statements such as that the story/information was *"already out there on YouTube."* No adequate action thereafter being taken by CDCR/CSP-COR, by 07/2024, Hector Ferrel gave interviews as a CDCR-insider with alleged and graphic details about 19CM-1882 and began selling the real crime scene photos via his Patreon memberships and used these photos to promote that Patreon website membership.

53. Former inmate (now deceased) Michael Sigala [under screenname Savag3 Studios] stated on one of his (several) videos about Pl./19CM-1882, *"That picture came to me exclusively from a CO who took that picture with his own cell phone,"* with the real crime scene photos featured in his YouTube and TikTok videos and exchanged for follows on his Instagram. Commenters included several individuals who self-identified as CDCR employees.

54. It was also brought to Pl.'s attention that KGET17 News' the *Man with a Thousand Faces* podcast used the leaked photos. Pl. was told this was a six-episode, unauthorized, defamatory biography of Pl. with an episode dedicated to 19CM-1882. The reporter/narrator stated online she had used writing seen in a leaked crime scene photo to name the podcast. Against CDCR policy, prison worker Danielle Peña Gonzales also conducted a lengthy, exclusive interview for the podcast but had not followed protocol to report the leaked crime scene photos featured in the podcast to CDCR, and she had not received the proper CDCR authorization for her to participate in a media production on an open, inmate case that took place in a prison facility. The reporter throughout the production described the leaked crime scene photos, acknowledged she was not supposed to have them, and stated that she had shared the photos, including:

55. Episode 3, timestamps 1:49 – 2:12,
*"I managed to get crime scene photos from the latest very gruesome murder Jamie Osuna is accused of. I had to put the photo somewhere less obvious than my phone's camera roll—I'm not supposed to have them for one thing. Also, it'd be very unpleasant if any unsuspecting person was scrolling through my phone and stumbled upon them—trust me, you can't unsee these. Anyhow, I put them into a folder on my phone where I had stored other photos."* Episode 5, timestamp 19:37, *"When I first saw the crime-scene photos."* Timestamp 26:42, *"One more thing Jamie wrote on his cell walls in blood that the crime scene photos I have don't show you."* Timestamp 29:53, *"...wasn't in those articles or even noted in the autopsy report but something I noticed immediately in the crime-scene photos."* Episode 6, timestamp 6:17, *"The crime scene photos showed..."* Through timestamps 6:35-6:48, the reporter described sharing the leaked photos, *"Hearing about the crime scene and seeing it are two different things. After careful consideration, our*

*executive producer Patricia Rocha decided she wanted to have the visual of the gore I'd been describing to her."*

56. Pl. was shocked at news of the photos being shared and used like this. Pl. was not even allowed to have the photos with his legal discovery. On or around 10/19/2020, Judge R. Edwards of Kings County Superior Court ruled Pl. was not allowed to have the photos due to the security issue that "weak points" in the CSP-COR facility could be found in the photos, which would "undermine" CSP-COR's safety and security. Prior to this ruling, Pl. had requested to receive the photos in order to itemize discrepancies in what ISU had itemized in the crime report versus what was shown in the photos—including legal textbook *Prisoners' Self-Help Litigation Manual,* which is shown in one leaked photo, but omitted from ISU's lists of in-cell items, and which was missing from the cell after ISU's investigation.

57. Some heavily redacted/censored versions of the posts were mailed to Pl. to submit with typed out links as incontrovertible proof with his 602 for the leak. On or around 06/18/2023, Pl. received the Mailroom's CDCR 1819 Form *Notification of Disapproval-Mail/Packages/Publications* ("1819") which cited CA Title <u>§ 15 3006 (c)</u> *Contraband* as the reason for disallowance.

58. Pl.'s dispute for this mail elevated through a unit sgt. to Def. C. Love (ISU Lt.) who denied Pl.'s request for the redacted evidence. So, at no later than this time, Def. C. Love was put on notice that the crime scene investigation photos that were/are his unit's mandatory responsibility to securely maintain within their chain of evidence had been disseminated to the public.

59. Around the end of June or July, Defs. A. Guerrero, J. Fugate approached Pl.'s cell about the mail dispute. Def. A. Guerrero told Pl. that Pl. was not allowed to have the

redacted/censored photos. Pl. explained to Def. that the photos were from 19CM-1882—

unlawfully disseminated by Defs. Does and that 19CM-1882's report/materials were

considered confidential/sealed by the courts.

60. Def. A. Guerrero—an officer of the very unit in charge of investigating misconduct—stated

to Pl. that there was nothing Def. could do about it, that this was a civil matter and Pl. could

not have the redacted/censored evidence, for Pl. to just "602 it," and that Pl. could "appeal

it." Under normal protocol, Def. would have accepted the evidence and or initiated an

investigation. Instead, Def. refused to even take the evidence. Def. took no further adequate

reporting/investigative actions. Def. additionally informed Pl. that Pl. was not allowed to

grieve/file a complaint about the leaked photos because 19CM-1882 was an "ongoing case,"

and that 602ing it would "jeopardize [19CM-1882]." Pursuant to CA Title 15 § 3481, Pl. is

granted the ability to submit a grievance/602 over misconduct/disputes.

61. Redacted/censored versions of the photos were eventually processed through the mail, along

with captures of the social media posts of correctional staff bragging about going into Pl.'s

C-File/SOMS and viewing and or getting copies of the photos. Pl. appended these as

evidence/exhibits to the 602s/appeals.

62. On or around 03/23/2023, Def. J. Zamora came to Pl.'s cell-front regarding Pl.'s request for

his trust account statement. Pl. now learned through this conversation that there was no

longer elevated security on Pl.'s C-File/SOMS. At first, Def. denied Pl.'s C-File/SOMS ever

had elevated security, but Pl. stated to Def. that Pl. had the committee paperwork showing

CHCF held a special committee in order to implement this elevated security.

63. Pl. then learned that the security was lifted from Pl.'s C-File/SOMS possibly around

03/2023 or earlier—after the date Pl. had first put CDCR/CSP-COR on notice of the leak via

verbal complaints/602. CSP-COR had been maintaining Pl.'s C-File/SOMS without any security measures.

64. During 2023, Pl. attended committees during which he brought up the breaches of his file/19CM-1882 seeking a remedy. Attendees included Defs. A. Johnson, J. Zamora, K. Matta, B. McKinney, T. Sparks, and or others. In the committee held on or around 05/18/2023, Pl. requested of the participants that his C-File/SOMS be restored to/back on elevated security measures to halt/prevent ongoing breaches/leaks.

65. Def. A. Johnson stated in response to Pl.'s request, "You're not known in the public—only in here." Def. J. Zamora agreed. Def. J. Zamora had also previously told Pl. that she had not heard of C-Files/SOMS being secured like this except for Hollywood-star-type prisoners in special units and that she did not feel Pl. met this criteria/need, that Def. did not think Pl.'s file should be secured like that.

66. Pl. then once again explained that there has been/still is serious data breaches concerning his file, that confidential crime scene/investigation photos from 19CM-1882—a potential death penalty case—were published online with correctional staff posting about looking at/getting those photos from Pl.'s file. Pl. emphasized that there had been/is a court motion/order to seal 19CM-1882's record, and that Defs. had/have an obligation to secure Pl.'s C-File/SOMS to stop the leak. Pl. stated that Defs. should report it so that the leak could be contained, adequately addressed—and these Defs. laughed at Pl. Pl. explained Pl. was suffering irreparable legal injuries from the publishing of these photos, and Pl. explained the extreme emotional injuries he was suffering from the distress it caused Pl., which had triggered Pl.'s mental health symptoms, including his self-mutilative behaviors and around several commitments to the Crisis Unit in less than a six months period. Defs. A. Johnson

and J. Zamora each told Pl. that if Pl. "didn't like it to 602 it." Def. J. Zamora stated that they needed a court order before they would act. Pl. was reminded that the purpose of the committee was only to address his mental health.

67. The security measures were never restored to Pl.'s C-File/SOMS, which currently remain unsecured. None of the above Defs. followed protocol to report Pl.'s allegations of misconduct—illicit intrusions/unauthorized disseminations—when pursuant to CDCR DOM 33070.5, CDCR employees when put on notice of misconduct *must* report it. In or around 06/2023, Pl. received the committee's report from the above meeting. The participants/recorder omitted from the report Pl.'s statements and requests for his file security to be increased and for the leak to be addressed.

68. Mid 07/2023, during an interview for one of Pl.'s mental health 602s, Pl. put Def. E. McDaniel on notice of the leak and the emotional injuries it caused Pl., including triggering Pl.'s PTSD/self-injurious behaviors and Crisis Unit commitments. Def. emphasized to Pl. that Def. was only there to address the mental health 602, and, against CDCR protocol, had not afterward reported Pl.'s allegations.

69. Around this same time, during an interview for one of Pl.'s mental health 602s, Pl. put M. Whittaker (CSP-COR health CEO) on notice of the leak and the emotional injuries it caused Pl., including triggering Pl.'s PTSD/self-injurious behaviors and Crisis Unit commitments. M. Whittaker emphasized to Pl. that he was only there to address the mental health 602, and, against CDCR protocol, had not afterward reported Pl.'s allegations.

70. Around May or June, Pl. was escorted to a confidential setting by Defs. A. Guerrero, E. Sanchez, T. Brazelton, and or other ISU Officers for an interview over Pl.'s complaint against a mental health clinician for sexual harassment. Pl. had with him the evidence of the

leak spreading online. Pl. attempted to give these ISU officers the evidence/print outs for ISU Officers to report/investigate.

71. Def. A. Guerrero at that time stated to Pl. that because of the nature of the discussion, Def. had to turn off his body camera, and the cameras were then turned off.

72. Pl. showed Def. the documents and stated to Def., "I filed a 602 attaching [copies of these documents]. Your supervisors, ISU crime scene officers failed to secure the photos and when I brought it to you guys' attention, you ignored me and failed to take action."

73. Def. asked Pl., "What will it matter—they're everywhere." Def. had not followed protocol and took no action after this to address the issue.

74. Def. T. Brazelton stated to Pl. that Def. had been on the same social media sites trading leaked photos. Despite having been on the same sites, Def. had neither reported such leaks to CDCR, nor investigated/acted. Def. had additionally been one of the responding ISU officers for 19CM-1882, so that it is reasonable to expect this Def. to have recognized the authenticity of the leaked photos, the serious, injurious ramifications for Pl. from the leak.

75. In 2023, during 19CM-1882 court transportation, Pl asked Def. A. Guerrero about the status of Pl.'s 602s on the leaks and whether ISU/CSP-COR were getting the photos taken down.

76. Def. A. Guerrero responded to Pl. that the leak "doesn't matter," that the photos were "already out there," so "why even bother" addressing it, that unless something is marked in Pl.'s C-File then Def. wouldn't look into it/acknowledge it.

77. Def. R. Silva, as AW/AOD, allowed the 602s' investigations/appeals to close as not sustained without adequate action taken to address the crime scene photos leak.

78. F. Chavez, C. Gonzales (AIMS/OIA) investigated Pl.'s 602s on the leaks and had interpreted the 602s as that Pl. had stated Defs. K. Clark, C. Morelock, others, had

personally released the photos. Based on this interpretation, AIMS/OIA were enabled to

close the 602s as not sustained. Against protocol, no adequate action was taken to address

the unauthorized crime scene photos dissemination to the public and illicit file intrusions.

79. 07/24/2023, based on that same interpretation, Def. T. Campbell signed/sent Pl. an

institutional memo finding Pl.'s allegations of the breaches/leaks as not sustained. Def. had

not followed protocol and had not initiated an investigation into how the illicit file intrusions

and confidential photos had been unauthorized disseminated to the public out of CSP-

COR's/ISU's chain of evidence.

## VII.  CLAIMS FOR RELIEF

## CLAIM ONE: FIRST AMDT. TO THE U.S. CONSTITUTION: RIGHT TO PETITION THE GOVT FOR REDRESS OF GRIEVANCES

80. The actions, omissions, conduct of Def. S. Harris, in retaliating against Pl. for Pl. exercising

Pl.'s constitutionally protected conduct of filing 602s/voicing complaints against Def., took

adverse action against Pl. when Def. excluded and terminated the Pl. from needed,

recommended programs, resulting in denial of required rehabilitative treatment which

contributed to unnecessary and wanton infliction of pain, suffering, injuries constituted

retaliation for protected conducted, violating Pl.'s First Amdt. rights.

81. The actions, omissions, conduct of Def. T. Sparks, in retaliating against Pl. for Pl.

exercising Pl.'s constitutionally protected conduct of filing 602s/voicing complains against

Def., Def. took adverse action against Pl. when she personally made the decision to

continually exclude and terminate Pl. from needed, recommended programs resulting in

denial of required rehabilitative treatment which contributed to unnecessary and wanton

infliction of pain, suffering, injuries constituted retaliation for protected conducted, violating Pl.'s First Amdt. rights.

82. The actions, omissions, conduct of Def. E. McDaniel in retaliating against Pl. for Pl. exercising Pl.'s constitutionally protected conduct when Def. excluded and terminated the Pl. from needed/recommended programs unless Pl. accepted Def.'s trade/proposal for Pl. to give up Pl.'s protected rights, resulting in unnecessary and wanton infliction of pain and injuries, actions, constituted retaliation and violated Pl.'s First Amdt. rights.

83. The actions, omissions of Def. K. Clark in retaliating against Pl. for filing 602s/voicing complaints against Def. took adverse action against Pl. when he ordered the confiscation/destruction of Pl.'s legal materials, property, evidence over crime scene photos constituted retaliation and violated Pl.'s First Amdt. rights.

**CLAIM TWO: FOURTH AMDT. TO THE U.S. CONSTIT.; SEARCH AND SEIZURE**

84. The actions of Defs. Does entering Pl.'s C-File/SOMS, to which the public does not have access, for personal gratification and non-work purposes constituted an illicit intrusion and violated Pl.'s rights to be free of unreasonable searches guaranteed under the Fourth Amdt.

85. The actions of Defs. Does, upon that illicit intrusion into Pl.'s C-File/SOMS, by any means taking/copying the crime scene photos without consent or warrant or probable cause, without any correctional/investigative goal, constituted unreasonable seizure, violated Pl.'s rights to be free of unreasonable seizure guaranteed under the Fourth Amdt.

86. Defs. Does knew or it is reasonable that Defs. should have known that the taking/sharing of the crime scene photos for gratuitous, non-work purposes violated the law, that neither consent, warrant, nor probable cause granted Defs. permission for seizure and disclosure.

87. Defs. Does accessed these confidential records which were/are stored on a private system, to which records/system public access is prohibited. After copying/taking these confidential photos in any manner, Defs. Does then possessed and unlawfully disseminated the confidential/investigative photos to non-law enforcement individuals/arenas. Defs. Does were acting while under the color of law or otherwise were in connection with/by virtue of their state employment with CDCR.

88. Defs. Does committed the above-described actions with intention of causing or with wanton, reckless disregard of the probability of causing irreparable harm to Pl.'s legal case and emotional injuries/damages, had triggered Pl.'s severe mental health symptoms leading to multiple self-mutilation injuries/extensive keloid scarring and repeated Crisis Unit holds, entitling Pl. to punitive damages in an amount appropriate to punish Defs. and to make an example of them to the community.

89. Directly due to Defs. Does' actions, Pl. suffered/suffers irreparable legal damages, physical injuries/scarring, severe emotional injuries in an amount to be proven at trial.

**CLAIM THREE: FIRST AMDT. TO THE U.S. CONSTIT.; RETALIATION.**

90. The actions and omissions of Def. Counselor J. Zamora, in retaliating against Pl. for and right after filing 602s/voicing complaints against her and exercising his protected constitutional conduct, Def. took adverse action by conducting unfavorable classification decisions by going against and changing the higher boards classification and security, etc., then continued blocking further reclassification opportunities, worsening living conditions, working/program conditions, refused to reclassify despite officials' own board recommendations, constituted retaliation and violated Pl.'s First Amdt. rights.

91. The actions and omissions of Def. Counselor K. Matta, in retaliating against Pl. right after filing 602s/voicing complaints against her and exercising his protected constitutional conduct, Def. took adverse action by conducting unfavorable classification decisions by going against and changing the higher boards classification and security, etc., then continued blocking further reclassification opportunities, worsening living conditions, working/program conditions, refused to reclassify despite officials' own board recommendations, constituted retaliation and violated Pl.'s First Amdt. rights.

92. The actions and omissions of Def. AW B. McKinney, in retaliating against Pl. for and right after filing 602s/voicing complaints against her and exercising his protected constitutional conduct, Def. took adverse action by conducting unfavorable classification decisions by going against and changing the higher boards classification and security, etc., then continued blocking further reclassification opportunities, worsening living conditions, working/program conditions, refused to reclassify despite officials' own board recommendations, constituted retaliation and violated Pl.'s First Amdt. rights.

93. The actions and omissions of Def. AW R. Silva , in retaliating against Pl. right after filing 602s/voicing complaints against her and exercising his protected constitutional conduct, Def. took adverse action by conducting unfavorable classification decisions by going against and changing the higher boards classification and security, etc., then continued blocking further reclassification opportunities, worsening living conditions, working/program conditions, refusal to reclassify despite officials' own board recommendations, constituted retaliation and violated Pl.'s First Amdt. rights.

94. The actions and omissions of Def. Warden T. Campbell, in retaliating against Pl. right after filing 602s/voicing complaints against her and exercising his protected constitutional

conduct, Def. took adverse action by conducting unfavorable classification decisions by going against and changing the higher boards classification and security, etc., then continued blocking further reclassification opportunities, worsening living conditions, working/program conditions, refusal to reclassify despite officials' own board recommendations, constituted retaliation and violated Pl.'s First Amdt. rights.

95. The actions of Def. A. Guerrero retaliated against Pl. for and right after Pl. filed 602s/voicing complaints against Def./exercising constitutionally protected conduct, Def. took adverse action against Pl. by the confiscation/destruction of Pl.'s legal materials/legal properties related to the grievances/complaints, constituted retaliation and violated Pl.'s First Amdt. rights.

96. The actions of Def. V. Pena retaliated against Pl. for and right after Pl. filed a 602s/voiced complaints against Def. for exercising his protected conduct, Def. took adverse action against Pl. by the confiscation/destruction of Pl.'s legal materials/legal properties related to 602/complaint, constituted retaliation, violated Pl.'s First Amdt. rights.

97. The actions of Def. T. Brazelton retaliated against Pl. for and right after Pl. filed 602s/voiced complaints Def. for exercising his protected conduct, Def. took adverse action against Pl. by the confiscation/destruction of Pl.'s legal materials/legal properties related to 602/complaint, constituted retaliation and violated Pl.'s First Amdt. rights.

98. The actions of Def. E. Sanchez retaliated against Pl. for and right after Pl. filed 602s/voiced complaints Def. for exercising his protected conduct, Def. took adverse action against Pl. by the confiscation/destruction of Pl.'s legal materials/legal properties related to grievance/complaint, constituted retaliation and violated Pl.'s First Amdt. rights.

99. The actions of Def. J. Fugate retaliated against Pl. for and right after Pl. filed 602s/voiced complaints Def. for exercising his protected conduct, Def. took adverse action against Pl. by the confiscation/destruction of Pl.'s legal materials/legal properties related to grievance/voiced complaints, constituted retaliation and violated Pl.'s First Amdt. rights.

100. The actions of Def. A. Arisco retaliated against Pl. for and right after Pl. filed 602s/voiced complaints against Def. for exercising his protected conduct, Def. took adverse action against Pl. by the confiscation/destruction of Pl.'s legal materials/legal properties related to grievance/complaint, constituted retaliation and violated Pl.'s First Amdt. rights.

101. The actions of Def. R. Rubio retaliated against Pl. for and right after Pl. filed 602s/voiced complaints against Def. for exercising his protected conduct, Def. took adverse action against Pl. by the confiscation/destruction of Pl.'s legal materials/legal properties related to grievance/complaint, constituted retaliation and violated Pl.'s First Amdt. rights.

102. The actions of Def. C. Love retaliated against Pl. for and right after Pl. filed 602s/voiced complaints against Def. for exercising his protected conduct, Def. took adverse action against Pl. by the confiscation/destruction of Pl.'s legal materials/legal properties related to grievance/complaint, constituted retaliation and violated Pl.'s First Amdt. rights.

103. The actions of Def. C. Morelock retaliated against Pl. for and right after Pl. filed 602s/voiced complaints against Def. for exercising his protected conduct, Def. took adverse action against Pl. by the confiscation/destruction of Pl.'s legal materials/legal properties related to grievance/complaint, constituted retaliation and violated Pl.'s First Amdt. rights.

104. The actions of Def. C. Navarro retaliated against Pl. for and right after Pl. filed 602s/voiced complaints against Def. for exercising his protected conduct, Def. took adverse action

against Pl. by the confiscation/destruction of Pl.'s legal materials/legal properties related to grievance/complaint, constituted retaliation and violated Pl.'s First Amdt. rights.

105. The actions of Def. E. Leija retaliated against Pl. for and right after Pl. filed 602/voiced complaints against Def. for exercising his protected conduct, Def. took adverse action against Pl. by the confiscation/destruction of Pl.'s legal materials/legal properties related to grievance/complaint, constituted retaliation and violated Pl.'s First Amdt. rights.

106. The actions of Def. Property Officer M. Medina retaliated against Pl. for and right after Pl. filed 602s/voiced complaints against Def. for exercising his protected conduct, Def. took adverse action against Pl. by the confiscation/destruction of Pl.'s legal materials/legal properties related to 602/complaint, constituted retaliation, violated Pl.'s First Amdt. rights.

107. The actions of Def. Property Officer S. Weaver retaliated against Pl. for and right after Pl. filed 602s/voiced complaints against Def. for exercising his protected conduct, Def. took adverse action against Pl. by the confiscation/destruction of Pl.'s legal materials/legal properties related to grievance/complaint, constituted retaliation and violated Pl.'s First Amdt. rights.

108. The actions and omissions of Def. Warden T. Campbell in retaliating against Pl. for and right after Pl. exercised his protected constitutional conduct by addressing complaints/notices directly to Def. by authorized prison letters/notices/complaints regarding deficiencies in the grievance program and Def. herself/actions, and notices of Pl. being retaliated on by Defs. for notifying/talking with the OIG regarding the illicit intrusion and unlawful seizure of Pl.'s security files/crime scene photos, and other issues. Def. took adverse action right after, denying Pl. a transfer because of letters and notices to Def., resulting in denial of rehabilitative treatment, loss of confidential legal visits, and loss of

property, and a higher security threat: regarding work/group/privilege/programs, constituted retaliation and violated Pl.'s First Amdt. rights.

109. The actions and omissions of Def. Lt. A. Aranda in retaliating against Pl. for and right after Pl. exercised his protected constitutional conduct by addressing complaints/notices directly to Def. by authorized prison letters/notices/complaints regarding deficiencies in the grievance program and Def. himself/actions, and notices of Pl. being retaliated on by Defs. for notifying/talking with the OIG regarding the illicit intrusion and unlawful seizure of Pl.'s security files/crime scene photos, and other issues. Def. took adverse action right after, denying Pl. a transfer because of letters and notices to Def., resulting in denial of rehabilitative treatment, loss of confidential legal visits, and loss of property, and a higher security threat: regarding work/group/privilege/programs, constituted retaliation and violated Pl.'s First Amdt. rights.

110. The actions and omissions of Def. M. Kimbrell in retaliating against Pl. for and right after Pl. exercised his protected constitutional conduct by addressing complaints/notices directly to Def. by authorized prison letters/notices/complaints regarding deficiencies in the grievance program and Def. herself/actions, and notices of Pl. being retaliated on by Defs. for notifying/talking with the OIG regarding the illicit intrusion and unlawful seizure of Pl.'s security files/crime scene photos, and other issues. Def. took adverse action right after, denying Pl. a transfer because of letters and notices to Def., resulting in denial of rehabilitative treatment, loss of confidential legal visits, and loss of property, and a higher security threat: regarding work/group/privilege/programs, constituted retaliation and violated Pl.'s First Amdt. rights.

111. The actions and omissions of Def. E. Cantu in retaliating against Pl. for and right after Pl. exercised his protected constitutional conduct by addressing complaints/notices directly to Def. by authorized prison letters/notices/complaints regarding deficiencies in the grievance program and Def. herself/actions, and notices of Pl. being retaliated on by Defs. for notifying/talking with the OIG regarding the illicit intrusion and unlawful seizure of Pl.'s security files/crime scene photos, and other issues. Def. took adverse action right after, denying Pl. a transfer because of letters and notices to Def., resulting in denial of rehabilitative treatment, loss of confidential legal visits, and loss of property, and a higher security threat: regarding work/group/privilege/programs, constituted retaliation and violated Pl.'s First Amdt. rights.

112. The actions and omissions of Def. AW B. McKinney in retaliating against Pl. for and right after Pl. exercised his protected constitutional conduct by addressing complaints/notices directly to Def. by authorized prison letters/notices/complaints regarding deficiencies in the grievance program and Def. herself/actions, and notices of Pl. being retaliated on by Defs. for notifying/talking with the OIG regarding the illicit intrusion and unlawful seizure of Pl.'s security files/crime scene photos, and other issues. Def. took adverse action right after, denying Pl. a transfer because of letters and notices to Def., resulting in denial of rehabilitative treatment, loss of confidential legal visits, and loss of property, and a higher security threat: regarding work/group/privilege/programs, constituted retaliation and violated Pl.'s First Amdt. rights.

113. The actions and omissions of Def. Cpt A. Johnson in retaliating against Pl. for and right after Pl. exercised his protected constitutional conduct by addressing complaints/notices directly to Def. by authorized prison letters/notices/complaints regarding deficiencies in the

grievance program and Def. himself/actions, and notices of Pl. being retaliated on by Defs. for notifying/talking with the OIG regarding the illicit intrusion and unlawful seizure of Pl.'s security files/crime scene photos, and other issues. Def. took adverse action right after, denying Pl. a transfer because of letters and notices to Def., resulting in denial of rehabilitative treatment, loss of confidential legal visits, and loss of property, and a higher security threat: regarding work/group/privilege/programs, constituted retaliation and violated Pl.'s First Amdt. rights.

114. The actions and omissions of Def. CC J. Zamora in retaliating against Pl. for and right after Pl. exercised his protected constitutional conduct by addressing complaints/notices directly to Def. by authorized prison letters/notices/complaints regarding deficiencies in the grievance program and Def. herself/actions, and notices of Pl. being retaliated on by Defs. for notifying/talking with the OIG regarding the illicit intrusion and unlawful seizure of Pl.'s security files/crime scene photos, and other issues. Def. took adverse action right after, denying Pl. a transfer because of letters and notices to Def., resulting in denial of rehabilitative treatment, loss of confidential legal visits, and loss of property, and a higher security threat: regarding work/group/privilege/programs, constituted retaliation and violated Pl.'s First Amdt. rights.

115. The actions and omissions of Def. CC K. Matta in retaliating against Pl. for and right after Pl. exercised his protected constitutional conduct by addressing complaints/notices directly to Def. by authorized prison letters/notices/complaints regarding deficiencies in the grievance program and Def. himself/actions, and notices of Pl. being retaliated on by Defs. for notifying/talking with the OIG regarding the illicit intrusion and unlawful seizure of Pl.'s security files/crime scene photos, and other issues. Def. took adverse action right after,

denying Pl. a transfer because of letters and notices to Def., resulting in denial of

rehabilitative treatment, loss of confidential legal visits, and loss of property, and a higher

security threat: regarding work/group/privilege/programs, constituted retaliation and

violated Pl.'s First Amdt. rights.

### VIII. PRAYER FOR RELIEF

WHEREFORE, Pl. respectfully prays for relief as follows:

**A. Issue declaratory judgements/statements that Defs.' actions complained of herein violated Pl.'s rights under the U.S. Constit. as alleged herein;**

**B. Issue compensatory damages:**

    a. For compensatory damages in an amount to be proven at trial.

    b. For all punitive damages in an amount appropriate to punish the Def. and make an example of the Def. to the community.

    c. For any additional general and or specific, consequential and or incidental damages in an amount to be proven at trial.

    d. For all nominal damages.

    e. For all interests, where/as permitted by law.

**C. Issue injunction orders to:**

116. Order CDCR/CSP-COR to take all actions required to adequately address 19CM-1882 case crime scene photos/materials leak, and its impact on 19CM-1882.

117. Order social medias, websites, other media/owners to remove and destroy any videos, posts, other materials herein mentioned/omitted which contain the actual or only the descriptions in audio/text/any manner of the leaked materials.

118. Order CDCR/CSP-COR to conduct an audit of all accesses to Pl.'s C-File/SOMS and fully reprimand per violation each unauthorized (e.g., no legitimate work reason) access; and provide Pl. proof of this action with summaries of all findings and outcomes.

119. Order CDCR/CSP-COR to immediately implement any additional, adequate safeguards regarding Pl.'s C-File/SOMS as is technologically possible, which increased security measures are not to be again lowered in the future.

120. Seize all monies/profits from any site/individual gained by/for using any manner of copies of the illicitly seized/unauthorized disseminated confidential photos/19CM-1882 materials, whether in visual replication or audio/text descriptions, or by titling/naming, branding any products/productions, in/of any medium/media, including: Sword and Scales (website and social medias), KGET17's *Man with a Thousand Faces* podcast (from all platforms/vehicles, including KGET17 News' website, YouTube, Apple Podcast, Spotify, any other hosts not herein listed), Fenix Media (website and social medias), Patreon, and any others here omitted but found fitting the criterion herein listed or otherwise determined appropriate.

121. Prohibit the use, reuse, reissuing of such materials/productions in any manner in the future, and any existing copies to be destroyed.

**D. Order any/all punitive measures for Defs. To the fullest extent of applied laws.**

**E. Grant any such other relief as may appear that Pl. is entitled.**

## <u>DEMAND FOR JURY TRIAL</u>

Pl. demands a trial by jury on all issues triable by jury.

Respectfully submitted on October 31, 2024,

*[signature]*

---

PC CIVIL RIGHTS COMPLAINT UNDER 42 U.S.C. § 1983
OSUNA V. GUERRERO, ET AL