

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

Jamie Osuna BD0868
PO Box 3476
Corcoran, CA 93212
 Plaintiff,
    v.
Guerrero, et al,
 Defendants.

No. 1:24-cv-01009-SAB

AN OBJECTION TO MAGISTRATE JUDGE'S FINDINGS AND ORDER DUE TO MISCATEGORIZATION OF CLAIMS AND ERRORS AND REQUEST TO REVIEW ERRORS

(Doc. 13.)

    For Part B, search and seizure, the Plaintiff objects and disagrees with the Magistrate Judge that Plaintiff did not state he suffered an injury due to the release of crime scene photos. Plaintiff did clearly state that he expressed after committee when he asked the counselors to re-secure his file to stop it and that people were still getting access to his records and the photos and posting these online, and due to the inflammatory, slanderous remarks around these sites, that inmates are reacting, and the Plaintiff is being consistently threatened and harassed, and there is evidence of inmates coming forth, verifying this to staff. And due to these threats, harassment every time Plaintiff leaves his cell to go to an appointment, it has triggered Plaintiff's PTSD episodes and psychosis that led to injuries, self-inflicted injuries, which also may satisfy the injury requirement under 1997(e), the PLRA requirement for emotional distress must accompany or include an injury. Plaintiff has suffered emotional distress with injuries. Inmates' girlfriends/wives/family members who see these photos on YouTube, with the monologue of correctional officers talking about Plaintiff, claiming the Plaintiff did crimes and acts that are not true, which makes the inmates react violently towards the Plaintiff. The Plaintiff is diagnosed with a serious mental illness and is a *Coleman* class member and is a part of the mental health delivery system and is in a medical unit. The personal photos and others are of a secured medical facility, and because it is a medical unit, personal photos were released of images of patients in the facility this does violate medical confidentiality because it is the equivalent as if an inmate were in a private nursing home or private medical facility. The health care safety codes and the federal law Health Insurance Portability and Accountability Act (HIPAA) still apply and extends to inmates, but only in

1  extreme cases—and this is an extreme case—one that the Eastern District has not dealt with for
2  an inmate before.
3        In Part B, search and seizure right to privacy, (page 8), the Magistrate Judge stated plaintiffs
4  do not have any privacy protections in prison—yet they do because even searches that are
5  justified must be conducted in a reasonable manner. Bell v. Wolfish, 441 US 520, 559-60, 99
6  S.Ct. 8261 (1979); Thompson v City of Los Angeles, 885 F.2d 1439, 1447, N.7 (9th Cir. 1987.)
7  (Strip and other searches may be unconstitutional if they are needlessly intrusive, abusively
8  performed.) See Vaughan v. Ricketts, 859 F.2d 736, 741-42 (9th Cir. 1988.) (Mass digital rectal
9  searches under public and unsanitary conditions); and other districts.
10       On the Magistrate Judge's point that inmates do not have privacy rights, there are cases where
11 abusive strip searches may violate the Eighth Amdt., as well as the Fourth Amdt. Personal photos
12 with personal cellphones were taken of the Plaintiff, and which did not have a correctional goal or
13 needs with correctional outcome. CDCR has strict policies against this. Even unnecessary lack of
14 privacy in taking urine samples is unreasonable. Sepulveda v. Ramirez (9th Cir. 1992); Storms v.
15 Coughlin; (citations omitted.) (During the strip search, the officers' conduct was
16 unconstitutional.) The Magistrate Judge stated the Plaintiff did not meet substantive due process
17 privacy for confidential medical information, and so forth, although the pictures that were
18 released were medical to document Plaintiff's injuries. The Plaintiff was in a medical facility and
19 the photos were/are not subject for the public's viewing. The officers did not have a search
20 warrant to take personal photos, nor was Plaintiff asked permission for the content to be put on
21 social media.
22       That the personal intrusion into the Plaintiff's privacy and strip search with no correctional
23 goal, and with the sadistic, malicious, intentional release of the content, is not actionable under
24 the Fourteenth Amdt., it could support a Fourth and Eighth Amdt. claim, that in which the
25 Magistrate Judge has the power to categorize a claim if it is not actionable under one claim but
26 can go forth in another. The Defendants took personal photos of the full body strip search of
27 Plaintiff and released them to the public, the Magistrate Judge brought the claim under the
28 Fourteenth Amdt. substantive due process privacy for medical records, that in which the Plaintiff

would like the District Judge to please review other rulings regarding excessive intrusive privacy claims for circumstances around strip searches.

In the Magistrate's discussion, part A, right to petition for redress of grievances, (page 8): Crawford- El v. Britton, 523 US 574, 588 N.10- 118 S.Ct. 1584 1998, states an unconstitutional condition is a demand that you give up a Constitutional right in return for some benefit. For example, if prison officials told an inmate they would only let the inmate have family visits if the inmate stopped filing lawsuits, and the inmate files a lawsuit and they deny the inmate's family visits as a result, it is retaliation, as it reverses the time sequence. Retaliation claims logically should not be subject to the *Lewis v. Cassie* requirements that the plaintiff show actual injury in the form of impairment of litigation of a non-frivolous claim; in retaliation claim the harm suffered is the adverse consequences, which flows from the inmate's Constitutionally protected action. Instead of being denied access to courts, the prisoner is penalized for actually exercising that right.

Under Austin v. Terhune, 367, F.3d. 1167, 1171 (9th Cir. 2004), if a plaintiff is pleading a First Amdt. retaliation claim, obviously you should mention the First Amdt.; however, courts have held **"that this is not legal necessary as long as you plead facts showing you were subjected to adverse action as a result of engaging in protected speech."**

In the Plaintiff's first complaint, the Magistrate Judge stated that certain claims were not actionable under a 42 U.S.C. § 1983, and for the Plaintiff to amend his complaint. The plaintiff took the Magistrate's Judge's advice, conducted research, and brought the first claim for retaliation for exercising his First Amdt. rights and being retaliated on by the Defendants for that petitioning the government for redress of grievances and voicing complaints. The second claim was search and seizure under the Fourth Amdt., and the third claim was another retaliation claim, such as the first. In the Magistrate Judge's response, Part A, (page 8), he stated inmates do not have a Constitutional right to an effective grievance and procedure process and found that Plaintiff failed to state a cognizable *due process* claim to the extent Plaintiff's claim asserted the inmate grievance system was inadequate. He cited case law regarding a *due process* claim. The Plaintiff had set forth a *retaliation* claim, showing the Plaintiff was exercising his protected

1  conducted, protected by the First Amdt. The protected conduct was the Plaintiff voicing
2  complaints which were freedom of speech and the right to petition for redress of grievances, and
3  so forth, guaranteed by the First Amdt., meaning that the Plaintiff's conduct under the First Amdt.
4  is protected—such as accessing the grievance system, being free from retaliation.

5  The Magistrate Judge should have accepted the retaliation claim and not classified it as
6  deprivation denying due process. Austin v. Terhune (9th Cir. 2004) and Hines v. Gomez, (9th Cir.
7  1997) (citations omitted), and others, the dismissed due process claims under *Sandin* holding
8  retaliation claims could go forward. Even though one federal appeals court formally has held that
9  a retaliation claim must shock the conscious to state a Constitutional violation, the rule hasn't
10 been abandoned that retaliation claims are allowed to go forward as long as the prisoner properly
11 pleads the required elements and provides some factual support for them on summary judgement.
12 The adverse action must be sufficient to chill a person of ordinary firmness in the exercise of
13 Constitutional rights. *See* Rhodes v. Robinson, 408 F.3d 559 568-69 (9th Cir. 2005), and other
14 districts.

15 The question whether a particular action would deter a person of ordinary firmness is an
16 objective one and does not depend on how a particular plaintiff reacts. The question is whether
17 the defendant's actions are capable of deterring a person of ordinary firmness. Adverse actions
18 need not independently violate the Constitution to support a retaliation claim nor need it impose
19 "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison
20 life." *See* Sandin v. Conner, 515 US 472, 484, 115 S.Ct. 2293 (1995.) As is required to support a
21 claim of deprivation of liberty denying due process. *See* Austin v. Terhune (9th Cir. 2004)
22 (citation omitted.)

23 The Magistrate Judge ignored Plaintiff's retaliation claims and stated that Plaintiff failed to
24 state a cognizable due process claim, which is an error, and it is also a contradiction to the
25 Magistrate Judge's ruling from the first screening process. The Magistrate Judge states, for
26 example, a certain claim is not actionable under 42 U.S.C. § 1983 and tells plaintiff to amend and
27 fix it, and when plaintiff does fix or changes it to something cognizable, he refuses to accept the
28 changed claims. The Magistrate Judge fails to accept the amended complaint and focuses on

1  words and makes a word the whole claim. For example, the Plaintiff stated in one action, one
2  claim that the Defendant took retaliatory adverse action against the Plaintiff for and right after the
3  Plaintiff filed grievances against that Defendant. The Plaintiff stated the adverse action was that
4  the Defendant threatened Plaintiff with disciplinary action and further use of force if Plaintiff
5  continued protected conduct. The Plaintiff stated he suffered disciplinary charges and loss of yard
6  privileges and liberties, meaning by the word liberty freedoms enjoyed by inmates. The
7  Magistrate Judge then made this whole retaliation claim a liberty interest claim and stated that
8  there is no liberty interest and therefore the Magistrate Judge ignored the whole retaliation claim.
9  The same has happened here where the Plaintiff under the First Amdt. put the right to petition for
10 redress of grievances, meaning that was the protected conduct that Plaintiff was doing and the
11 Defendants retaliated on Plaintiff. The Magistrate Judge ignored the long, extensive claims
12 explaining the five elements that are not even used in due process. And he still classified it as a
13 Fourteenth Amdt. due process claim contending the Plaintiff stated that he has a Constitutional
14 right to a grievance process. The Plaintiff did not state this. Because of this error, the Plaintiff is
15 unable to amend his complaint because Plaintiff did not state or bring this and by amending the
16 complaint, it would be admitting these categorizations and only harm Plaintiff's claims.

17     The Plaintiff would like the District Judge to please look at Plaintiff's amended complaint and
18 compare to the findings and discussion of the Magistrate Judge and make a finding with that and
19 then allow to give a proper response and allow the Plaintiff to amend the complaint based off of
20 that, if need be.

21     The Magistrate Judge confuses ways to prove retaliation to the Constitution such as
22 circumstantial evidence, which in Hines v. Gomez 108 F.3d 265, 268 (9th Cir. 1997), provided the
23 "jury could infer retaliatory motive from evidence from prison staff that the plaintiff had a
24 reputation for complaining or whining from his having filed many grievances and from his having
25 told the defendant he would be filing a grievance against him." Type stuff evidence that has been
26 found to support retaliation claims include the suspicious timing of adverse action shortly after
27 the prisoner has made complaints or filed grievances. See Bruce v. Ylst, 351 F.3d 1283, 1288 (9th
28 Cir. 2003.) (Citing suspect timing of gang validation that closely followed plaintiff's success in

1  grievance.)

2  Regarding Part C, the Plaintiff is unable to amend his complaint and fix any deficiencies, if there are any, because of the miscategorization of the Plaintiff's first claim retaliation was made into a Fourteenth Amdt. due process claim. As the Plaintiff did in his first retaliation claim, he brought retaliation claims where officers would threaten Plaintiff with disciplinary charges, further threats of violence with continuous cell searches if Plaintiff were to file grievances or continue with the courts. The Ninth Circuit recently overturned a First Amdt. complaint made by the Eastern District where an inmate filed a First Amdt. claim that an officer threatened him with disciplinary charges if he wrote a complaint and the Eastern District said it was not a cognizable claim. The inmate showed he was exercising protected conduct guaranteed by the Fist Amdt. of the U.S. Constitution, as filing a grievance is protected by the Constitution and threats of taking disciplinary actions is unconstitutional and offends the Constitution and infringes on plaintiffs' First Amdt. rights to exercise. Plaintiffs need not show injury but only that the inmate had been chilled from exercising their First Amdt. rights.

This was an issue in Plaintiff's other filing. It is not for the Magistrate Judge to decide whether, for example, if the plaintiff hands an officer privileged legal mail for the civil courts and that privileged legal mail was never forwarded to the courts and the civil case was dismissed with prejudice, that the plaintiff was "speculating" and then make a defense for that officer, such as that it could have been someone else or that the court had just thrown away the mail. The Plaintiff brings the elements per case law that are similar to the plaintiffs' that were granted by the courts or the Ninth Circuit. As long as a plaintiff satisfies the elements, it is up to a jury and not for the Magistrate Judge to decide and for the defendants to show their defense or for a motion of dismissal. This has been a continuous problem where, for example, the Magistrate Judge had previously stated how does the Plaintiff not know that the warden Ken Clark did not forward the letter to someone, when the Ninth Circuit states that the warden could be held liable if the plaintiff makes him aware of the incidents and asks for help, and he fails to correct that action or failed or intervene. Forwarding the letter did not make the Plaintiff safe or deter those Defendants from beating the Plaintiff and it is not the Magistrate Judge's task to come up with defenses for

1  the Defendants but the Defendants themselves.

2  The Magistrate Judge, in part C, stated the basic elements for retaliation but did not cite case law where cases were shown to be insufficient and sufficient. There are adverse action claims that were sufficient. Rizzo v. Dawson, (9th Cir. 1985), (denial of transfer); Price v. Wall, (D.R.I. 2006) (transfer to another state where plaintiff could not get required rehabilitative treatment, refusal to reclassify despite officials own board's recommendation.) See Gomez v. Vernon, 255 F.3d 1118, 1127, 1130 (9th Cir. 2001.) (Threats of transfer causing prisoner to quit law library job.) Rizzo v. Dawson, 778 F.2d 527, 531-32 (9th Cir. 1985.) (Exclusion from programs.) Price v. Wall, 428 F. Supp. 2d 52, 55 (D.R.I. 2006.) (Transfer resulting in required rehabilitation treatment.) Austin Terhune (9th Cir. 2004) (citation omitted.) (Disciplinary resulting in 27 days loss of privileges was adverse), *per curiam.*

Hines v. Gomez, 108 F.3d 265 (9th Cir. 1997), affirmed jury verdict for plaintiff subjected to retaliation for filing grievances. Dannenberg v. Valadez, 338 F.3d 1070, 1079 (9th Cir. 2003.) (Noting jury verdict of $6500 compensatory and $2500 punitive damages for retaliation for assisting another prisoner with litigation noting injunction requiring expungement of material related to disciplinary action.) Unconstitutional retaliation may be remedied by an injunction even if the practices are not formally part of official policy. Gomez v. Vernon, 255 F3.d 1118, 1127, 1129-30 (9th Cir. 2001.) Roland, 770 F. Supp. 1399, 1406 (N.D.Cal. 1991.) There may be circumstances where the exercise of other rights may also support a retaliation claim. The First Amdt. forbids prison officials from retaliating against prisoners from exercising the right of free speech. Vance v Barrett, 345 F.3d 1083, 1093-94 (9th Cir. 2003.) (Firing prisoners from their jobs for refusing to sign an agreement to waive interest on their savings accounts to which they were Constitutionally entitled under the due process clause was unconstitutional.) Pratt v. Roland, 770 F.Supp. 1399, 1406 (N.D.Cal. 1991.) (Granting injunction.) Also to support a retaliation claim, adverse action must be sufficient to deter or chill a person of ordinary firmness in the exercise of Constitutional rights. See Rhodes v. Robinson (9th Cir. 2005.) (Citation omitted.)

The Magistrate Judge failed to establish that prisoners do not have to show that they were actually deterred from exercising their rights. If that were the law, the fact that a prisoner kept

1  complaining or filed suit about the retaliation would defeat the claim. Rhodes v. Robinson, 408
2  F.3d 559, 569 (9th Cir. 2005.)
3      The Plaintiff was exercising his First Amdt. right of free speech, such as voicing to the
4  Defendants (e.g. counselors), that they should have never lifted Plaintiff's file security that was
5  placed by the warden of another prison and now individuals were accessing the Plaintiff's records
6  and releasing these to social media. The Plaintiff voiced his complaint to the Defendants and the
7  actions he would be taking, and then the Plaintiff filed a complaint against the Defendants. The
8  Defendants then took adverse action against the Plaintiff for raising the issues regarding the
9  release of records that are deemed confidential. Crawford-El v. Britton, 53 US 574, 588 N.10.,
10 118 S.Ct. 1584 (1998), "The reason why such retaliation offends the Constitution is that it
11 threatens to inhibit exercise of a protected right. Among the actions that the courts have found
12 sufficiently adverse to support a retaliation claim are assaults, threats, others combined, although
13 threats of bodily harm alone even in retaliation for litigation activities do not state a
14 Constitutional claim, placement in segregated confinement filing false disciplinary charges.
15 Austin v. Terhune 367 F.3d 1167 1170-71 (9th Cir. 2004.) (Confiscation or destruction of
16 property, denial or interference with medical care.)
17     Case law also cites an objection to or denial of transfer, termination or denial of jobs or
18 programs, and so forth. Although the Plaintiff would state the adverse action, the Magistrate
19 Judge has a history of stating that there is no Constitutional right for a transfer but if the transfer
20 or denial of transfer was done out of retaliation because the plaintiff was exercising his protected
21 conduct and the denial of transfer deprived the Plaintiff of much needed rehabilitation treatment,
22 it is unconstitutional and violates the First Amdt. There are cases won in the court for this.
23 Plaintiff would like proper review of the complaint.

Respectfully submitted on May 28, 2025

*/s/ Jamie Osuna*

p.p. Jamie Osuna, CDCR # BD0868